■ SHEILA SMITH, Appellant, v MINSTER MACHINE COMPANY, Respondent. [649 NYS2d 257] —Order modified on the law and as modified affirmed without costs in accordance with the following Memorandum: Plaintiff commenced this action against defendant, Minster Machine Company (Minster), the manufacturer of a power-press, for personal injuries she sustained while operating the press at her work place. When the press was purchased by the original buyer, it was equipped with a standard two-hand control system, designed to engage both hands of the operator while the press was being cycled. The only warning placed on the machine pertained to lubrication instructions and press specifications. At the time of the accident, the two-hand control had been replaced by a movable barrier guard, which was installed on the front of the press frame and operated by a pneumatic foot-pedal valve. Neither the guard nor the foot pedal was manufactured or provided by Minster. An examination of the machine after the accident re-

vealed that the operator's hand was exposed to the operation of the press because a guard had not been properly adjusted.

Minster moved for summary judgment dismissing the complaint upon the grounds that post-sale modifications to the press had altered a key safety feature, and there was no showing that a warning would have given plaintiff any more appreciation of the dangers involved, which were obvious and apparent. Supreme Court agreed and dismissed the complaint in its entirety. That was error.

It is now well established that "[m]aterial alterations at the hands of a third party which work a substantial change in the condition in which the product was sold by destroying the functional utility of a key safety feature, however foreseeable that modification may have been, are not within the ambit of a manufacturer's responsibility" (*Robinson v Reed-Prentice Div.*, 49 NY2d 471, 481). Nevertheless, post-sale modifications to a product do not defeat a products liability claim unless those modifications rendered a safe product defective and caused the injuries (*Lamey v Foley*, 188 AD2d 157, 168).

Here, there is a question of fact whether the post-sale modifications to the press constituted material alterations that rendered the press defective. It cannot be determined on this record whether, as a matter of law, the modifications rendered an otherwise safe product defective. The issues whether the modifications were contemplated by Minster at the time of sale, and whether the modifications constituted material alterations sufficient to exculpate Minster from liability were within the province of the jury.

There is also a question of fact whether the press was defectively designed and manufactured. Although the press was manufactured with a dual hand control safety feature, it was also designed to permit operation by use of a foot control. Moreover, a device to permit such operation was part of the original order, and was part of the control package. Notwithstanding, Minster provided no comparable safety device to protect an operator's hands when the press was operated by a foot pedal. Thus, a factual issue exists whether Minster had an obligation to furnish an appropriate guard, and if so, whether the failure to install a guard was the proximate cause of plaintiff's injuries.

Furthermore, if a product is "purposefully manufactured to permit its use without a key safety feature, it is for the jury to determine the scope of the product's intended purposes and whether the product was reasonably safe when placed in the stream of commerce" (*O'Bara v Piekos*, 161 AD2d 1118, 1119).

Plaintiff has also raised a question of fact regarding Minster's duty to warn. The duty of a manufacturer to provide instructions and warnings on the proper and safe use of its product extends to persons exposed to a foreseeable and reasonable risk of harm by the failure to warn (*Oliver v NAMCO Controls,* 161 AD2d 1188). The contention of Minster that it cannot be held liable for the failure to warn because plaintiff was aware of the specific hazards involved and the danger was readily apparent is without merit. Plaintiff was 18 years of age at the time of the accident and had been employed for approximately ten days prior thereto. She had not operated the press at issue prior to the day of the accident. "[T]he obviousness of the danger and the extent of plaintiff's knowledge of the danger are issues appropriate for resolution by the jury" (*Frederick v Niagara Mach. & Tool Works,* 107 AD2d 1063, 1064; *see, Doty v Navistar Intl. Transp. Corp.,* 219 AD2d 32, 37). Similarly, the issue whether Minster's failure to warn proximately caused plaintiff's injuries is a question for the jury (*see, Kingsland v Industrial Brown Hoist Co.,* 136 AD2d 901, 902; *see generally, Derdiarian v Felix Contr. Corp.,* 51 NY2d 308, 315, *rearg denied* 52 NY2d 784). Finally, although the record establishes that, before Martec Industries acquired the press, defendant sent to General Railway Signal warnings concerning the use of a guard at the point of operation on the press and directed General Railway Signal to install a warning sign or placque on the press, "[t]he adequacy of the warning in a products liability case based on a failure to warn is, in all but the most unusual circumstances, a question of fact to be determined at trial" (*Cooley v Carter-Wallace Inc.,* 102 AD2d 642). Thus, we modify the order by denying in part Minster's motion for summary judgment and reinstating the negligence and strict products liability causes of action.

All concur except Balio, J., who dissents in part and votes to affirm in the following Memorandum:

Balio, J. (dissenting in part). I disagree with the majority's conclusion that factual issues exist with respect to defendant's liability for failure to warn. Thus, I respectfully dissent in part and vote to affirm the order insofar as it dismissed that portion of the complaint seeking to impose liability for failure to warn.

Plaintiff testified at an examination before trial that she "had been around machines enough to know you don't stick your hand in there", meaning into the point of operation. There were some 15 power presses at her place of employment, and, prior to the accident, she had been instructed "don't intentionally, like, when it's coming down, put your hand in there" and

"to keep your hands out of the point of operation". There is no evidence that plaintiff by reason of her age lacked the ability to appreciate what she acknowledged was "common sense". The record indicates that plaintiff was familiar with machines and that, in light of her experience and training, understood that she was not to put her hand into the point of operation while the press was cycling. Any warnings that defendant might have provided merely would have informed plaintiff of a danger that she already appreciated, and thus, as a matter of law, the lack of a suitable warning notice was not a proximate cause of the accident (*see, Lonigro v TDC Elecs.*, 215 AD2d 534, 535-536; *Petrie v B. F. Goodrich Co.*, 175 AD2d 669; *Lancaster Silo & Block Co. v Northern Propane Gas Co.*, 75 AD2d 55, 65). (Appeal from Order of Supreme Court, Monroe County, Ark, J.—Summary Judgment.) Present—Denman, P. J., Pine, Fallon, Doerr and Balio, JJ.